# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3232

_____

| | | |
|---|---|---|
| City of Pierre, a municipal corporation; Gary L. Drewes, individually and as Mayor of the City of Pierre, a municipal corporation; | * * * * * * | |
| | * | Appeal from the Federal |
| Petitioners, | * | Aviation Administration. |
| | * | |
| v. | * | |
| | * | |
| Federal Aviation Administration; Barry Valentine, as Acting Administrator of the Federal Aviation Administration; Cecelia Hunziker, as Regional Administrator of the Federal Aviation Administration; | * * * * * * * * | |
| | * | |
| Respondents. | * | |

_____

Submitted: March 11, 1998
Filed: July 24, 1998

_____

Before WOLLMAN and HANSEN, Circuit Judges, and GOLDBERG, Judge.[1]
_____

HANSEN, Circuit Judge.

The City of Pierre and Gary Drewes petition, pursuant to 49 U.S.C. § 46110(a) (1994), for review of the Federal Aviation Administration's (FAA's) order decommissioning the Flight Service Station (FSS) at the Pierre Regional Airport in Pierre, South Dakota. We grant petitioners' motion to supplement the petition for review, and we affirm the FAA's closure order.

I. Facts and Background

In the 1920s, the first FSSs were established in order to provide ground communication with mail airplanes flying between Washington, D.C. and Oakland, California. See Flight Service Station Modernization Plan, 45 Fed. Reg. 26202, 26203 (1980). During the 1930s and 1940s, additional FSSs were built across the country, and the role these installations played expanded to encompass additional functions, such as relaying traffic control clearances and accepting position reports for Air Route Traffic Control Centers. By 1960, however, many of these functions had been transferred to remote air-ground communications facilities. Since 1960, the role of FSSs has been limited to providing weather and aeronautical services to noncommercial pilots. Id. After conducting a comprehensive study, the FAA announced in 1980 that the 290 then-existing FSSs in the contiguous 48 states would be phased out and replaced with 61 Automated Flight Service Stations (AFSSs). Id. Pierre, which had been home to an FSS, was not chosen as one of the 61 AFSS sites.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

2

Rather than closing all of the FSSs at once, the FAA gradually phased out these facilities over the course of almost two decades. The FAA did not close the Pierre FSS until September 4, 1997. The facility was scheduled for closure on August 16, 1997, but a judge of this court granted a temporary stay. On September 4, 1997, an administrative panel of this court lifted the temporary stay, and the Pierre FSS closed.

On August 15, 1997, the City of Pierre and its mayor (collectively "the City") petitioned, pursuant to 49 U.S.C. § 46110(a), for review of the closure decision. The City asks us to set aside the FAA's closure order and enjoin the closing of the Pierre FSS. Alternatively, the City requests a full evidentiary hearing regarding the basis for the FAA's closure order. We deny the petition and affirm the closure decision of the FAA.

## II. Jurisdiction

We first address the question of whether we have jurisdiction. Pursuant to 49 U.S.C. § 46110(a), interested parties may petition for judicial review of FAA orders in the appropriate court of appeals. However, petitions must be filed within 60 days of the issuance of the order. Id. The FAA argues that the final order to close the Pierre FSS was the 1980 decision to close all 290 FSSs and replace them with 61 AFSSs. See Resolution of Public Review; Identification of 61 Proposed [A]FSS Locations, 45 Fed. Reg. 81707 (1980). The FAA argues that because roughly 17 years have elapsed since this plan was published in 1980, we lack jurisdiction to consider the City's petition for review.

We do not believe that the 1980 decision to phase out the FSSs constituted the final resolution of the question of whether the Pierre FSS would be closed. The Ninth Circuit has written that for the purposes of section 46110, an FAA decision constitutes a reviewable order only if it (1) is final, (2) contemplates immediate compliance, (3) is public, and (4) is based on an administrative record that permits meaningful appellate

3

review.  City of Arcata v. Slater, No. 97-71015, 1997 WL 812258, at *1 (9th Cir. Dec. 24, 1997) (unpublished); see Blincoe v. FAA, 37 F.3d 462, 463-64 (9th Cir.1994).  The 1980 resolution did no more than specify phases for the implementation of the conversion from FSSs to AFSSs.  Although the resolution spoke of the closure of all 290 FSSs, it explicitly stated that "[c]onsolidation of individual existing FSSs will not be initiated until [various] preceding steps have been completed,"  45 Fed. Reg. at 81707, and projected that these "preceding steps" would not be completed until 1989, id. at 81709.  Because several "preceding steps" had to be completed over many years before any closings would be initiated, the 1980 resolution was not "final" with regard to the closing of the Pierre FSS, nor did it "contemplate immediate compliance."  Arcata, 1997 WL 812258, at *1.  Accordingly, it was not a reviewable "order" with respect to the closure of the Pierre FSS.

Intervening events also make clear that the 1980 plan could not have been the final order with respect to the Pierre closure.  Congress responded to the FAA's 1980 pronouncement by passing legislation which specified that no more than five FSSs could be closed before October 1, 1983, and that no FSS could be closed subsequent to that date until certain assurances had been made regarding the quality of services that would be provided after the closure.  See Airport and Airway Improvement Act of 1982, Pub. L. 97-248, § 528(c), 96 Stat. 324.  In 1987, Congress replaced the 1982 provision with a new provision stating that the FAA could not close an FSS unless "the service provided in the area after the closure . . . is provided by an [AFSS] with at least model 1 or better equipment."  Airport and Airway Safety and Capacity Expansion Act of 1987, Pub. L. 100-223, § 113, 101 Stat. 1486 (codified as amended at 49 U.S.C. § 44514) (replacing § 528 of the Airport and Airway Improvement Act of 1982) (the 1987 Act).  Finally, Congress passed the Federal Aviation Reauthorization Act of 1996, Pub. L. 104-264, § 1216, 110 Stat. 3213, 3285 (the 1996 Act), which placed specific limits on the FAA's authority to close three of the then-remaining FSSs.  Section 1216(c) of the 1996 Act provided that the FAA could not close the Pierre FSS for at least 180

4

days, and that before it could close this facility after the expiration of 180 days, it must first certify to the House Committee on Transportation and Infrastructure and to the Senate Committee on Commerce, Science, and Transportation "that such closure will not result in a degradation of air safety, air service, or the loss of meteorological services or data that cannot otherwise be obtained in a more cost-effective manner, and that it will reduce costs to taxpayers." Id. § 1216(c). Until it satisfied the conditions of the 1987 and 1996 Acts, the FAA lacked the power to order the closure of the Pierre FSS. Because the last of these conditions was not satisfied until the FAA issued the necessary certifications to the congressional committees on July 1, 1997, the final closure order could not have issued before such time.

The language of the 1996 Act makes clear that the certifications themselves could not have constituted the FAA's closure order. Rather, satisfaction of the certification requirements was a precondition which had to be satisfied in order for the FAA to acquire the power to close the facility. See id. § 1216(c). Accordingly, the closure order must have issued some time *after* these certifications were made.

On July 10, 1997, ten days after making its certifications to the congressional committees, the FAA wrote to the City of Pierre, proposing that the FSS be decommissioned on August 16, 1997, and soliciting comments. This letter was too tentative to be a final order. At best it recites proposed action and asks for comments so that the FAA can complete its "study." It orders nothing to be done. See Red River Transp. & Dev. Co. v. FAA, 630 F.2d 592, 595 (tentative language of FAA letter rendered it not final) (8th Cir. 1980); Arcata, 1997 WL 812258, at *1 (tentative letter was not an order, but subsequent letter which stated final agency position was an order); Blincoe, 37 F.3d at 464-65 (letter not final order where by its terms the letter suggested that the administrative process was incomplete). After receiving comments from the City, the FAA wrote again on August 14, 1997, this time to inform the City that the FSS would definitely be closed on August 16, 1997. Unlike the letter of July 10, the letter of August 14 stated a final agency position and contemplated immediate

compliance. Furthermore, comments had been solicited and received from the City and other interested parties, such that the administrative record was complete as of the time that this letter was sent.

We hold that the letter of August 14, 1997, was the final decision of the FAA. Because the City's August 15, 1997, petition was filed within 60 days of this order, we have jurisdiction to review the final closure order of the FAA. We do not, however, have jurisdiction to review the sufficiency of the certifications to Congress, which were not orders and do not fall within the scope of 49 U.S.C. § 46110.

III. The Closure Decision

The City argues that the 1996 Act required the FAA to make new findings with respect to the Pierre FSS. Additionally, the City argues that the Administrator's certifications are a final order subject to our review. We respectfully disagree as to both contentions. In our view, the 1996 Act did not restart the closure decision-making process, nor did it give the petitioners any additional rights to be heard on the issue. The 1996 Act did not require the FAA to undertake any formal contested case proceedings with respect to its Pierre closure decision. The FAA's certifications to the congressional committees could be based on the information it had already acquired and assembled, and the certification letter was essentially a report to Congress and for Congress's purposes. The statute did nothing more than require the Administrator to wait six months and then assure the Congress that the already-planned closure of the Pierre FSS would meet congressionally defined goals.

Because our review is jurisdictionally limited to the FAA's closure order, see 49 U.S.C. § 46110(c), we do not have jurisdiction to address the basis for the certifications to Congress. Rather, we review these certifications only to ascertain whether the FAA waited the requisite 180 days and made all of the necessary

6

assurances to both of the specified committees as required by the 1996 Act. It is undisputed that it did.

Because section 46110 is silent as to the standard to be applied when reviewing nonfactual matters, we look to the Administrative Procedure Act (the APA) for guidance. See Public Citizen, Inc. v. FAA, 988 F.2d 186, 196 (D.C. Cir. 1993). Pursuant to section 10(e) of the APA, we set aside agency actions only when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We have interpreted this standard very narrowly, holding that "[a]s long as the agency provides a rational explanation for its decision, a reviewing court cannot disturb it." National Wildlife Fed'n v. Whistler, 27 F.3d 1341, 1344 (8th Cir. 1994). This narrow standard of review reflects the considerable deference which we afford to decisions made within an agency's area of expertise. Id.

The FAA provided a detailed explanation of and justification for its action in its August 14 letter to the City. The FAA explained that the AFSS located in Huron, South Dakota, would provide round-the-clock air-ground communications, clearance delivery, preflight weather briefings, hazardous weather information, NEXRAD Doppler weather radar information, direction finder service, and airport information service. (Jt. App. at Tab 4). Additionally, the FAA explained that an automated surface observing system (ASOS) would be installed at the Pierre airport to provide official weather reports which would update every minute, 24-hours-a-day, and that until this system was in place, contract human weather observers would provide a similar service. Id. The FAA estimated that the closure of the Pierre FSS would save the taxpayers over $170,000 in the first year and over $300,000 in each subsequent year. Id. This estimate is substantiated by internal FAA documents. (See FAA Consolidation Study, Jt. App. at Tab 3). Based on these facts, the FAA concluded that the closure of the Pierre FSS would "not result in a degradation of air safety, air service, or the loss of meteorological services or data that cannot otherwise be obtained in a more cost-effective manner and that it will reduce cost[s] to taxpayers." (Jt. App.

7

at Tab 4). In light of this detailed, rational explanation, we cannot find that the FAA's decision was arbitrary, capricious, or otherwise contrary to law. See Whistler, 27 F.3d at 1344.

The City argues that it was denied due process, citing Board of Regents v. Roth, 408 U.S. 564 (1972), and Mathews v. Eldridge, 424 U.S. 319 (1976). However, due process is only owed to those who stand to be deprived of a cognizable property or liberty interest. See U.S. Const. amend. V; Roth, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). The City has provided no support for the proposition that it had any cognizable liberty or property interest whatsoever in the continued operation of the Pierre FSS. Accordingly, it had no constitutional right to notice, a hearing, or an opportunity to be heard in relation to this matter.[2]

The 1996 Act granted the Pierre FSS a reprieve—a reprieve which expired on July 1, 1997. After that time, the FSS was subject to closure by the FAA, just as the FAA has closed every other FSS in the contiguous 48 states. Today, not one of the original 290 FSSs remains. One may question whether the conversion from the old system of FSSs to the new network of AFSSs has been a good one, as the City does, but that is a public policy question for the Congress rather than the federal courts. We hold simply that the closure of the Pierre FSS by the FAA was not arbitrary, capricious, or otherwise contrary to law.

----

[2]Although it was not constitutionally required to do so, the FAA gave notice and solicited comments before it issued the final order to close the Pierre FSS. In fact, the City submitted written comments which were received and considered prior to the issuance of the final order of August 14, 1997.

IV.

Accordingly, we affirm the order of the Federal Aviation Administration closing the Pierre FSS.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT